UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| CONNIE ARNOLD, | ) |
|     *Plaintiff*, | ) Case No. 1:24-cv-201 |
| v. | ) Judge Travis R. McDonough |
| CENTURION OF TENNESSEE, LLC, *et al.*, | ) Magistrate Judge Christopher H. Steger |
|     *Defendants*. | ) |

**MEMORANDUM AND ORDER**

Plaintiff, a Tennessee Department of Correction ("TDOC") prisoner housed in the Bledsoe County Correctional Complex ("BCCX"), filed a pro se complaint for violation of 42 U.S.C. § 1983 arising out of various medical care incidents during his BCCX confinement (Doc. 1), a motion for leave to proceed *in forma pauperis* (Doc. 2), two supplements to the motion for leave to proceed *in forma pauperis* (Docs. 3, 7), and a motion to appoint counsel (Doc. 4). The Court will address Plaintiff's motions before addressing his complaint.

**I.  FILING FEE**

First, while it appears that Plaintiff is subject to the three-strikes rule of 28 U.S.C. § 1915(g), *see Arnold v. Brown, et al.*, No. 2:98-CV-371 (E.D. Tenn. Dec. 8, 1998) (dismissing case pursuant to § 1915(g)), the Court will allow Plaintiff to proceed *in forma pauperis* under the "imminent danger" exception to § 1915(g). *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008). It appears from Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 2) and prisoner trust account documents (Docs. 3, 7) that he cannot pay the filing fee in one lump sum. Accordingly, his motion for leave to proceed *in forma pauperis* (Doc. 2) is **GRANTED**.

Plaintiff is **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit to the Clerk, U.S. District Court, 900 Georgia Avenue, Chattanooga, Tennessee 37402, as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to his inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint. 28 U.S.C.§ 1915(b)(1)(A) and(B). Thereafter, the custodian of Plaintiff's inmate trust account is directed to submit twenty percent (20%) of his preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), on a monthly basis until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

To ensure compliance with this procedure, the Clerk is **DIRECTED** to provide a copy of this memorandum and order to both the custodian of inmate accounts at Plaintiff's current institution and the Court's financial deputy. This order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

II.     **COUNSEL**

Plaintiff filed a motion to appoint counsel (Doc. 4) in which he states that he has limited knowledge of the law and that appointment of counsel for him would better serve the interest of justice (*id.* at 1). Appointment of counsel in a civil proceeding is not a constitutional right, but a privilege justified only in exceptional circumstances. *Lavado v. Keohane*, 992 F. 2d 601, 605–06 (6th Cir. 1993). A district court has discretion to determine whether to appoint counsel for an indigent plaintiff. *Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir. 1992). In exercising that

discretion, the district court should consider the nature of the case, whether the issues are legally or factually complex, and the plaintiff's ability to present his claims. *Lavado*, 992 F.2d at 605–06.

As to the first two factors, in his complaint, Plaintiff alleges claims arising out of medical care during his incarceration (Doc. 1), which are standard prisoner § 1983 claims that are not overly factually or legally complex. As to the third factor, it is apparent from his filings that Plaintiff can adequately present his claims. Also, Plaintiff's assertion that he has limited knowledge of the law is common to almost all prisoner plaintiffs.

Accordingly, Plaintiff has not established that this is an extraordinary case where he is entitled to appointment of counsel, and his motion to appoint counsel (Doc. 4) is **DENIED**.

## III. COMPLAINT SCREENING

### A. Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive a PLRA review, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim do not state a plausible claim for relief. *Id.* at 681. Likewise, an allegation that does not raise a plaintiff's right to relief

3

"above a speculative level" fails to state a plausible claim. *Twombly*, 550 U.S. at 570. However, courts liberally construe pro se pleadings and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him a federal right. 42 U.S.C. § 1983.

### B.     Allegations

Plaintiff began seeking treatment for his eyes in early 2021 (Doc. 1, at 6). In February 2021, Defendant Bartek diagnosed him with glaucoma in his left eye and cataracts in his right eye and told Plaintiff that it was too early to take these conditions "out of [Plaintiff's] eyes" (*id.*).

In August 2021, "Plaintiff began seeing black dots and shiny silver stars in both eyes" and began having pain in his eyes (*id.*). Plaintiff therefore signed up for sick call and saw Defendant Bartek approximately fourteen days later (*id.*). This Defendant ordered "Brimodine" for Plaintiff, and Defendants Samuel and Tollett "ordered Dorzomalide and Latanoprost" for Plaintiff, but Plaintiff alleges that these medications contributed to him losing sight in his left eye (*id.* at 7). Plaintiff also claims that Defendant "Dr. Milton Saloman ordered [the] wrong eye[]glasses and ordered the wrong eye drops" for Plaintiff (*id.*). Plaintiff claims that this "burn[ed] his right eye [and] . . . caused it to go blind also," which he characterizes as medical malpractice (*id.*).

In mid-December 2021, Plaintiff saw Defendant Bartek and told this Defendant that his eyesight and pain were worse and that "his eyes were so sore he couldn't even wipe the water running from both eyes" (*id.* at 8). Defendant Bartek stated that Plaintiff had "a real war going on in both of [his] eyes" and recommended that Plaintiff go to a TDOC special-needs facility so that an eye doctor in private practice could examine and treat Plaintiff (*id.*).

4

Three months later, which would have been March of 2022, a TDOC officer told Plaintiff to pack up to go to the special-needs facility (*id.*). But when Plaintiff arrived at the property room, a different TDOC officer told Plaintiff he could only bring two changes of clothes and limited hygiene items to the special-needs facility, and that he had thirty minutes to unpack and repack (*id.*). However, Plaintiff was unable to see his property well enough to timely comply with this directive, at which time unspecified officers took Plaintiff to medical to sign a refusal for medical treatment, for which he was charged ten dollars (*id.*). The next day, Plaintiff sent an information request to the Warden and Assistant Warden to explain his involuntary refusal of the transfer to special needs (*id.* at 9). But "Centurion medical would not set another appointment with a private eye doctor" for Plaintiff despite his repeated requests (*id.*).

In September 2022, Plaintiff's eyesight had severely "waned" due to Defendant Bartek's deliberate indifference, and he was therefore sent to the special-needs facility to see "eye specialist Dr. Cast at Meharry Medical Center" (*id.*). Dr. Cast stated that he could fix Plaintiff's eyes and "would see [Plaintiff] again in a few weeks" (*id.*).

But on January 17, 2023, Dr. Cast told Plaintiff he would only repair Plaintiff's right eye and another doctor would repair Plaintiff's left eye (*id.*). Then, on January 24, 2023, Defendant Bartek told Plaintiff that the work on Plaintiff's right eye would be the only treatment Plaintiff would get in prison (*id.*). Plaintiff then asked Defendant Bartek why various Defendants had prescribed Plaintiff the wrong eye medication in a manner that contributed to Plaintiff losing sight in his left eye (*id.*). According to Plaintiff, some of the eye drops he was provided were not those ordered by the eye doctors, and "many of" them were out of date by two months, if not more (*id.* at 10). And Defendants Samuel and Tollett have told Plaintiff that they ordered certain medications for Plaintiff "at the instructions of Defendant Kaitlin Campbell" (*id.*). However, "this

5

Case 1:24-cv-00201-TRM-CHS   Document 8   Filed 02/14/25   Page 5 of 9   PageID #: 43

deliberate indifference caused [Plaintiff] to lose 100% sight in his left eye, and . . . continuous injury [degrade] to [his] right eye" (*id.*).

At Plaintiff's last appointment with Defendant Bartek in January 2023, this Defendant told Plaintiff that he did not have time to deal with prisoners like Plaintiff, that Plaintiff had various injuries to his right eye that would cause him to go blind, and that these injuries were due to the food from the prison kitchen, which Plaintiff claims was "making li[ght] of the fact that [he] was about to go blind" (*id.*). Plaintiff also showed Defendant Bartek his unprescribed eyeglasses, and Defendant Bartek said that Defendants Campbell and Sutton told this Defendant that they would not be using his services for Plaintiff any longer, and that he could not order Plaintiff a correct pair of glasses (*id.* at 11). Nevertheless, it appears that Plaintiff alleges that Defendant Bartek ordered prescription glasses for Plaintiff, but Plaintiff could not see anything when he put them on (*id.*). Thus, Plaintiff has been wearing used glasses from other inmates (*id.*).

On August 15, 2023, Plaintiff signed up for sick call and asked about other medications and his need to see an eye doctor, but his requests were denied (*id.*).

On April 20, 2023, Plaintiff signed up for sick call, at which point Defendant Tollett removed Plaintiff "from the chronic care list" and stated that no one would see him for his eye problems per Defendants Campbell and Sutton (*id.*). Also on April 20, 2023, Plaintiff "ask[ed] Defendant Samuel if he could get [Plaintiff] reclassed to [the special needs facility] where [Plaintiff] c[ould] receive the medical care for [his] eye problem and other medical needs . . . [,]" but Defendant Samuel refused to do this because Plaintiff refused to take ten pills (*id.*). Plaintiff asked what the pills were for, but Defendant Samuel told Plaintiff he did not need to know (*id.*).

6

On unspecified dates, Defendants Campbell, Sutton, Samuel, and Tollett retaliated against Plaintiff for his acts of filing grievances regarding getting the wrong medication and wrong glasses by refusing to provide him medical care (*id.*).

In January of 2020, Defendant Rich transferred Plaintiff to a medical center in Nashville due to swelling in his legs from varicose veins (*id.*). Plaintiff saw Dr. Adam Richter, who examined Plaintiff, said Plaintiff's condition was severe, said he was concerned with Plaintiff losing his feet if he did not get treatment, "voiced concern [regarding] how [Plaintiff] was even able to walk because of the swelling in [his] legs," and ordered Plaintiff wraps for his legs while showering (*id.* at 12). Dr. Richter recommended that BCCX set up and appointment for Plaintiff at a vein clinic, but as of August 28, 2023, Defendants Campbell, Rich, Samuel, and Tollett had refused to order a transfer for Plaintiff, despite Plaintiff requesting to see a specialist (*id.*). Also, Defendant Mussard ordered medical to stop providing the leg wrap treatment in retaliation for Plaintiff filing grievances against medical (*id.*).[1]

Plaintiff signed up for sick call on August 29, 2023, for continuous pain in his left hand, at which point he saw Defendants Rich, Samuel, and Tollett, who "only laugh[ed] at him[,] . . .refused to offer him any medical treatment," and stated that they did not know what was wrong and did not have any medication to give him for his pain (*id.*).

According to Plaintiff, Defendant Centurion has a custom or policy of denying him medical care, Defendants Samuel and Rich continue to deny him a necessary surgery, and Defendant Campbell (1) is aware of Plaintiff's injuries and could address the denial of medical treatment but

---

[1] Plaintiff also claims that, on unspecified dates, this Defendant gave him and others the wrong kind of medication on purpose (*id.* at 4).

7

refuses to intervene and (2) has told Plaintiff to file grievances regarding his medical care complaints even though TDOC policy prohibits such grievances (*id.* at 12–13).

Plaintiff has sued Centurion, Warden Shawn Phillips, Warden Brett Cobble, Health Administrator Kaitlin Campbell, Dr. Emma Rich, Dr. Brian Samuel, Dr. Stephen Bartek, Health Manager Phyllis Sutton, Nurse Practitioner Nathan Tollett, Dr. Milton Salomon, and Nurse Jessica Mussard (*id.* at 1, 3–6). As relief, Plaintiff requests compensatory, declaratory, and injunctive relief (*id.* at 13–14).

### C. Analysis

Tennessee's one-year statute of limitations applies to Plaintiff's claims. *Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005) (noting that federal district courts apply a state's statute of limitations to § 1983 claims); Tenn. Code Ann. § 28-3-104(a)(1)(B) (setting forth one-year statute of limitations for § 1983 claims). Federal law governs when the statute begins to run. *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (citations omitted). Under federal law, a cause of action accrues, and the limitations period begins to run, when the injury forming the basis of the claim is discoverable, *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991) (citing *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)), or when the cause of action is complete, *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1162 (6th Cir. 2021) (acknowledging that the "standard" rule is that the limitations period starts "when the plaintiff has a complete and present cause of action") (citation omitted).

It is apparent from the face of the complaint that more than a year before Plaintiff filed the complaint herein on June 14, 2024, he knew of his injuries resulting from (1) all his medical care claims **except** the medical claims arising from his sick calls that occurred on August 15 and 29, 2023, and (2) his retaliation claims. Accordingly, all these claims appear to be time-barred, and Plaintiff is **ORDERED** to show good cause as to why the Court should not dismiss these claims

8

as time-barred within fifteen (15) days of entry of this order. If Plaintiff does not timely comply with this order, the Court will **DISMISS** these claims as time-barred without further analysis and screen the two remaining claims in his complaint.

IV. **CONCLUSION**

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 2) is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. The Clerk is **DIRECTED** to provide a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy;

5. Plaintiff's motion to appoint counsel (Doc. 4) is **DENIED**;

6. Plaintiff is **ORDERED** to show good cause as to why the Court should not dismiss (1) all of his medical care claims **except** the medical claims arising from his sick calls that occurred on August 15 and 29, 2023, and (2) his retaliation claims;

7. Plaintiff is **NOTIFIED** that if he does not timely comply with this order, the Court will **DISMISS** all of his medical care claims **except** the medical claims arising from his sick calls that occurred on August 15 and 29, 2023, and his retaliation claims, and the Court will then screen the two remaining claims; and

8. Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen days of any change in address may result in the dismissal of this action.

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**